IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

KEVIN BARFIELD, #185340, )
 )
  Plaintiff, )
 )
  v. )  CASE NO. 2:11-CV-1114-WHA
 )   [WO]
 )
GARY HETZEL, )
 )
  Defendant. )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Kevin Barfield ("Barfield") challenging a myriad of conditions of confinement at the Easterling Correctional Facility ("Easterling").  The sole defendant remaining in this case is Warden Gary Hetzel.  Barfield seeks a declaratory judgment and transfer to a correctional facility closer to his home.  *Complaint - Doc. No. 1* at 6.

The defendant filed a special report and supporting evidentiary materials addressing the plaintiff's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of July 2, 2012 - Doc. No. 15*.  Thus, this case is now pending on the defendant's motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof, the plaintiff's response and the documents filed in support of the response, the

court concludes that the defendant's motion for summary judgment is due to be granted.[1]

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there are no genuine

---

[1] The plaintiff's response is neither sworn or verified under penalty of perjury.

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

issues of material fact for trial.). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is no genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v.*

3

*Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11ᵗʰ Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11ᵗʰ Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendant's properly supported motion for summary judgment, Barfield is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11ᵗʰ Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").   Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.   *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th

Cir. 2000) (en banc) (summary judgment appropriate where no genuine issues of material fact exist).  At the summary judgment stage, this court must "consider all evidence in the record .... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6

In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Barfield has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment. *Matsushita*, *supra*.

### III.  CLAIMS FOR RELIEF

In his complaint, Barfield alleges that during his confinement at Easterling the facility has been overcrowded, understaffed and underfunded causing various alleged unconstitutional conditions and actions to occur.  The challenged conditions and actions presented by Barfield include the following allegations:  (a) The law library is too small, maintains insufficient legal references, contains inadequate research tools and fails to provide inmates sufficient time to conduct research; (b) The water feels slimy and is irritating to the skin; (c) The kitchen is equipped with unsafe equipment; (d) Meals are inadequate; (e) He is forced to travel to the kitchen and other areas of the facility during times of inclement weather without an umbrella or raincoat; (f) Officers have threatened him with disciplinary actions; (g) An unidentified doctor ordered some inmates removed from the wellness diet; (h) Food trays and cups are not properly cleaned; (i) Drinks are served to inmates from containers in close proximity to trash cans; (j) Windows are missing screens; (k) Snakes have been killed at the facility; and (l) Inmates are charged a $3.00 co-pay for medical screening, a $3.00 fee for replacement of wristbands lost/damaged/ destroyed by inmates, and a $1.00 processing fee upon receipt of a money order.

### IV.  DISCUSSION

#### A.  Absolute Immunity

With respect to the alleged constitutional violations Barfield lodges against

defendant Hetzel in his official capacity, the defendant is entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendant is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity for asserted violations of Barfield's constitutional rights.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.  Threats

Barfield contends that correctional officers threatened him with disciplinary action

on two separate occasions with respect to his receipt of a wellness diet.  *Complaint - Doc. No. 1* at 3.  This claim entitles Barfield to no relief.

To state a viable claim for relief in a 42 U.S.C. § 1983 action, the conduct complained of must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution.  *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993).  Derogatory, demeaning, profane, threatening or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not rise to the level of a constitutional violation.  *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmate's constitutional rights); *Ayala v. Terhune*, 195 Fed. Appx. 87, 92 (3rd Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts ... resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *Sims v. Hickok*, 185 F.3d 875 (10th Cir. 1999) (district court's summary dismissal of inmate's complaint for failure to state a claim appropriate because officer's insults and racial slurs did not amount to a constitutional violation); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (verbal abuse, even if racially or ethnically motivated, does not give rise to a

cause of action under § 1983); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992) (mere threats, even to inmate's life, made by guard do not satisfy the objective component of the Eighth Amendment as verbal threats and harassment are "necessarily excluded from the cruel and unusual punishment inquiry...."); *Ivey v. Wilson*, 832 F.2d 950, 954-955 (6th Cir. 1987) (verbal abuse alone is not violative of the Eighth Amendment); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) ("alleged verbal threats by jail officials ... did not rise to the level of a constitutional violation."); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (Eighth Amendment trivialized by assertion that mere threat constitutes a constitutional wrong); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2nd Cir. 1986) (mere name-calling did not violate inmate's constitutional rights); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal abuse, including threat of harm, not actionable under § 1983). Thus, Barfield fails to state a cognizable claim with respect to the threats lodged against him by correctional officers and this claim is therefore due to be dismissed in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

## C. Respondeat Superior

Barfield also asserts that a doctor at Easterling ordered that certain inmates be removed from the wellness diet and complains that officers sometimes caused him to miss his meals. *Complaint - Doc. No. 1* at 3. Defendant Hetzel denies that he ever denied Barfield his wellness diet or ordered any other official to prohibit Barfield from receiving

a wellness diet.  Hetzel also asserts he had no involvement with any action by which Barfield was denied a meal.  The court assumes *arguendo* that Barfield was one of the inmates affected by the doctor's order.  Nevertheless, he is entitled to no relief from defendant Hetzel with respect to these claim.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003) (concluding supervisory officials are not liable on the basis of respondeat superior or

vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for actions of the officers denying Barfield a meal or the physician discontinuing his order for a wellness diet could attach to defendant Hetzel only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Barfield, however, has presented no evidence and the court cannot envision the existence of any evidence which would create a genuine issue of disputed fact with respect to deliberate indifference by defendant Hetzel. The record is devoid of evidence indicating that the defendant personally participated in or had any involvement, direct or otherwise, with the decision of the physician to remove inmates from the wellness diet or with the actions of officers providing security in the kitchen; rather, it is undisputed that defendant Hetzel did not participate in the challenged actions. In addition, the evidentiary materials before the court demonstrate that any decision rendered by the physician occurred in accordance with his professional judgment upon assessment of the inmates' physical

conditions.

In light of the foregoing, defendant Hetzel can be held liable for actions of a facility physician only if the defendant's actions bear a causal relationship to the purported violation of Barfield's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Hetzel, Barfield must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Hetzel] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Barfield has failed to meet this burden.

The record before the court contains no evidence to support an inference that Hetzel directed the doctor to act unlawfully or knew that he would act/acted unlawfully and failed to stop such action.  In addition, Barfield has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Hetzel failed to take corrective action.  Finally, the undisputed evidentiary materials submitted demonstrate that the challenged actions did not occur pursuant to a policy enacted by defendant Hetzel.

Thus, the requisite causal connection does not exist between the actions of the correctional

officer/physician and the defendant and liability under the custom or policy standard is not

warranted.

In addition, the claim against defendant Hetzel regarding the decision of a doctor

to remove various inmates from the wellness diet entitles Barfield to no relief as

> [t]he law does not impose upon correctional officials a duty to
> directly supervise health care personnel, to set treatment policy
> for the medical staff or to intervene in treatment decisions
> where they have no actual knowledge that intervention is
> necessary to prevent a constitutional wrong. *See Vinnedge v.
> Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim
> cannot be brought against managing officers of a prison absent
> allegations that they were personally connected with the
> alleged denial of treatment). Moreover, "supervisory
> [correctional] officials are entitled to rely on medical
> judgments made by medical professionals responsible for
> prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69
> (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir.
> 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx.
> 893, 897 (11th Cir. 2006).

*Cameron v. Allen, et al.*, 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007). Summary judgment

is therefore due to be granted in favor of defendant Hetzel on Barfield's claims addressing

discontinuation of the wellness diet.

### D.  Speculative Claims

To the extent Barfield presents claims based on a fear of conditions or actions which

could have but did not occur during his incarceration at Easterling, these claims do not

warrant constitutional protection.  Mere suppositious allegations that conditions ***could*** subsequently result in constitutional violations and/or that prison officials ***may*** at some time in the future act unfavorably towards an inmate fail to implicate a constitutionally protected interest.  *Conner v. Sticher*, 801 F.2d 1266, 1268 (11th Cir. 1986) ( plaintiff's subjective belief harm may occur provides no basis for relief); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (jurisdiction cannot be premised upon mere speculation); *Carter v. Heard*, 593 F.2d 10 (5th Cir. 1979) (Relief is not warranted when "the injury which [plaintiff's] pleadings contemplate is fancied, not real; prospective, not actual; and imagined, not threatened.").  Thus, claims based on possible future adverse actions or conditions are subject to dismissal as these claims are purely speculative and without constitutional implication.

### E.  Lack of Standing - Claims Alleged on Behalf of Other Inmates

Standing is a cornerstone of American jurisprudence on which jurisdiction lies. "[A] litigant may only assert his own constitutional rights or immunities."  *McGowan v. Maryland*, 366 U.S. 420, 429 (1961), citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 218-219 (1974) (plaintiff must assert a legally cognizable injury in fact before federal courts have jurisdiction).  "The essence of a standing question is whether the plaintiff has alleged 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness

which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult constitutional questions[.]' *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703 7 L.Ed.2d 663 (1962)." *Saladin v. City of Milledgeville*, 812 F.2d 687, 690 (11th Cir. 1987); *Harris v. McRae*, 448 U.S. 297, 320 (1981) (same).

Standing involves two aspects. The first is the minimum "case or controversy" constitutional requirement of Article III. *Saladin*, 812 F.2d at 690. "To satisfy this 'irreducible' constitutional minimum required for standing, a litigant must show 1) that he personally has suffered an actual or prospective injury as a result of the putatively illegal conduct; 2) that the injury can be fairly traced to the challenged conduct; and 3) that the injury is likely to be redressed through court action." *Saladin*, 812 F.2d at 690, citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *Warth v. Seldin*, 422 U.S. 490, 499 (1975). If any element is lacking, a plaintiff's claim is not viable. In addition, the Supreme Court has established several requirements based on prudential considerations. *Saladin*, 812 F.2d at 690 (internal citations omitted) ("The Supreme Court has also stated that, in addition to these essential constitutional requirements, a court should consider the case in light of three principles which might counsel judicial constraint, referred to as 'prudential' considerations.... Those considerations are 1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises

17

abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

The instant complaint references claims relative to conditions of confinement and actions to which other inmates have been subjected during their confinement at Easterling. With respect to the claims arising from alleged violations of other inmates' constitutional rights, Barfield is not "asserting [his] ... own legal rights and interests [but] rather ... the legal rights and interests of third parties." *Saladin*, 812 F.2d at 690. In accordance with applicable federal law as set forth herein, Barfield lacks standing to assert these claims. Summary judgment on such claims is due to be granted in favor of the defendant. This court will henceforth address those claims for which standing exists.

### F. Conditions at Easterling

Defendant Hetzel denies that the conditions made the basis of the instant complaint rise to the level of constitutional violations. Warden Hetzel addresses these claims as follows:

> Inmate Barfield alleges the Law Library is not sufficient. Recently, the Law Library burned and a temporary library was established. The temporary Law Library is adequate and meets [the] needs of the inmates. Law books are no longer needed since there is a contract with Lexus Nexis for research access. The Law Clerk assists the inmates with any research topics that they have. It is true that inmates are assigned time slots to utilize the Law Library, which is for security concerns. However, additional Law Library access may be requested with proof of an active case, either criminal

18

or civil. In addition, the Law Clerk can provide inmates with printed research materials when necessary.

As to Inmate Barfield's allegations that individuals are subjected to disease, unsafe drinking water and breaking out with skin disease[,] [t]hese allegations are untrue. Corizon is the medical contractor and provides ... medical services [to inmates]. There is no skin disease that has been identified by Corizon medical personnel [attributable to the water supply]. The drinking water is provided through the city water department, which supplies water to this prison and citizens in the community.... It is not contaminated and it is safe to drink.

Inmate Barfield alleges there are several issues concerning the kitchen. The kitchen is inspected routinely by the Alabama Department of Public Health, the Wardens, Captains and daily by the Kitchen Stewards.... Any and all deficiencies identified are corrected promptly by institutional maintenance personnel or Stewards.

Inmate Barfield alleges he is forced to go to the Kitchen and eat. This allegation is false. Inmates are not forced to eat in the Dining Hall. Inmate Barfield is prescribed a Wellness Diet [by the medical staff] that consists of an 1800 calorie diet. There are approximately 350 Wellness Diets served at each meal. There are no canopies over the sidewalks at this institution.... If an inmate elects to go to the Dining Hall in the rain, then he must return to his dormitory upon completion of his meal due to the 1,500 inmates having to utilize the Dining Hall. Raincoats are not issued to ... inmates. Inmates are restricted to their current location inside during lightning situations.

Inmate Barfield alleges, "Officers, between March 2011 [and] July 2011 has been overly aggressive with inmates who are in total Restraints (handcuffs)." I can find no evidence that complainant has been in an altercation with officers or abused by "overly aggressive" officers while assigned to Easterling Correctional Facility....

Inmate Barfield further alleges most windows do not have screens. This allegation is false. The window screens are ... checked by ... inspectors and institutional personnel. The maintenance department maintains a supply of screen material to replace any damaged screens. The Kitchen and Dining Hall have air curtains installed at the entrance and exit doors and an electronic insect tray installed in the hallway. I have no knowledge of snakes being killed as Plaintiff alleges.

Inmate Barfield alleges, "Due to overcrowding the inmates are at a Rapid Rate having altercations. This allegation is false. Inmate Barfield has a history of altercations at previously assigned institutions. Plaintiff has

thirteen (13) documented disciplinary actions within the Alabama Department of Corrections.  He also has had altercations in Perry County Correctional Center and Jefferson County Jail.  Inmate Barfield has documented association with the "Bloods," which is a Security Threat Group.  Recently, Plaintiff was fired from his job assignment in the Kitchen as line server due to his actions on August 3, 2011, resulting in a violation of rule #63, Disorderly Conduct.  Inmate Barfield argued with another inmate to the point in which they became engaged in a physical altercation.  Plaintiff was assigned to Segregation for his actions.

Inmate Barfield alleges the charging of fees or co-pays for money orders, medical visits and replacement wristbands.  These allegations are true.  ADOC policies, procedures, regulations and directives order and govern collection of these fees and co-pays.  Inmates are taught these rules during orientation upon arrival at Easterling Correctional Facility.

*Exh. 1 to the Defendant's Special Report - Doc. No. 14-*1at 1-3.[3]

In addition, James DeLoach, Associate Commissioner of Operations for the Alabama Department of Corrections, addresses the need for use of wristbands withing the prison system as follows:

Within the Alabama Department of Corrections, all major facilities utilize a wristband system.  The color of the wristband given to an inmate corresponds with what dorm he or she is housed.  The wristbands help to control the movement [of inmates] throughout the facility and help to quickly identify an inmates' housing assignment.  Although it is required that the inmates wear the wristbands at all times, some inmates remove them in an attempt to move more freely throughout the institution.  Doing so creates as security risk, and also takes staff at the institution from their other tasks in order to identify the offending inmate, and if necessary, to move him back to an authorized area.  The Alabama Department of Corrections also instituted

---

[3]With respect to the water quality issue raised by Barfield, the evidentiary materials filed in a separate case raising a similar claim "indicate that [this issue is] without merit as the water used at Easterling via Clio Water Works was 'in full compliance with the Safe Drinking Water Act and all Alabama Department of Environmental Management regulations' during the period of time relevant to the complaint.  *Exh. 1 to the Defendants' May 28, 2013 Response [Water Quality Report] - Doc. No. 27-1* at 2-6."  *Golston v. Hetzel, et al.*, 2:11-CV-946-MHT-WC (M.D. Ala.).

a policy that inmates would be charged three dollars to replace wristbands that are purposely removed or damaged by the inmate.  They are not charged to replace worn wristbands [or wristbands needed when] they move to a different dorm, or if the wristband is rightfully removed by officials within the institution or in a county jail.  This [replacement fee] helps to recoup the costs associated with providing additional bands and gives an incentive to inmates to not purposefully remove the wristbands.

*Exh. 2 to the Defendant's Special Report - Doc. No. 14*-2 at 1-2.

Although overcrowding and under staffing exists in the Alabama prison system, these facts, standing alone, are not dispositive of the issues before this court.  Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Id*. at 346.  Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Id*. at 348 (citation omitted).  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* at 347, 101 S.Ct. at 2399.  Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'  *Id.*"  *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).  Although, "the Constitution 'does not mandate

21

comfortable prisons' ... neither does it permit inhumane ones." *Farmer v. Brennan*, 511

U.S. 825, 832 (1994) (internal citation omitted); *Rhodes*, 452 U.S. at 345-346 (Conditions

may not be "barbarous" nor may they contravene society's "evolving standards of

decency."). Consequently, the conditions under which a prisoner is confined are subject

to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane

conditions of confinement; prison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the

safety of the inmates.'" *Farmer,* 511 U.S. at 832  (quoting *Hudson v. Palmer,* 468 U.S.

517, 526-527 (1984)); *Helling,* 509 U.S. at 31-32.  To demonstrate an Eighth Amendment

violation regarding conditions of confinement, a prisoner must satisfy both an objective

and a subjective inquiry.  *Farmer*, 511 U.S. at 834.  In *Farmer*, the Court identified both

objective and subjective elements necessary to establish an Eighth Amendment violation.

With respect to the requisite objective elements,  an inmate must first show "an objectively

substantial risk of serious harm ... exist[ed].  Second, once it is established that the official

is aware of this substantial risk, the official must react to this risk in an objectively

unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.  As to the subjective elements, "the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference....  The Eighth

Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ...  ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....  It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347.  "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions could be cruel and unusual under the contemporary standard of decency....  But conditions

that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347.  To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate.  *Id*. at 366.  In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards.  *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).  The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "***[s]ome*** conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need....  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.  Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."  *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991) (emphasis in original).

A prison official may likewise be held liable under the Eighth Amendment for acting

24

with "'deliberate indifference'" to an inmate's health or safety when the official knows that

the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to

take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct.

1970, 1974 (1994).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must

be a strong likelihood, rather than a mere possibility before [the responsible official's]

failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533,

1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes

clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under

section 1983...." *Id*.

(i) <u>Missing Window Screens, Unsafe Kitchen Equipment and Presence of Snakes</u>

<u>and Insects</u>.  Barfield alleges that screens are missing from windows at Easterling, the

kitchen utilizes unsafe equipment, insects are present in the dorms and snakes have been

killed on the grounds of the facility.  Despite these allegations, Barfield does not establish

that the challenged conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347.  Furthermore, Barfield fails to demonstrate deliberate indifference or reckless disregard by the named defendant with respect to his health or safety with respect to these conditions.  Specifically, Barfield does not identify any particular condition of which the defendant was aware from which an inference could be drawn that a substantial risk of serious harm existed.  The record is also devoid of any evidence showing that the defendant drew the requisite inference.  Consequently, summary judgment is due to be granted in favor of the defendant on the aforementioned conditions claims.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

(ii) Water Quality, Adequacy of Meals, Unsanitary Kitchen Items and Drink Service and  Occasional Exposure to Inclement Weather.  The Constitution does not mandate that prisons be comfortable, *Rhodes*, 452 U.S. at 349, and "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Chandler v. Crosby*, 379 F.3d 1278, 1296 (11th Cir. 2004).  None of the above listed conditions of confinement present a severe or extreme condition that posed an unreasonable risk of serious harm to Barfield's health or safety.  In addition, Barfield has not alleged that he suffered serious harm as a result of the water quality, the meals served, unclean kitchen items, drink service or his occasional exposure to outdoor weather conditions when traveling to/from areas of the

facility.  *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (holding that a prisoner must prove that the prison condition he complains of is sufficiently serious and "extreme" to violate the Eighth Amendment).  Barfield's mere subjective beliefs and conclusory allegations regarding these conditions do not create a genuine dispute of material and, as such, "are insufficient to withstand summary judgment." *Holifield*, 115 F.3d at 1564 n.6.  Accordingly, the court concludes that these alleged conditions do not rise to the level of an Eighth Amendment violation.  *Alfred v. Bryant*, 378 F.App'x 977, 980 (11th Cir. 2010) ("'Inmates cannot expect the amenities, conveniences and services of a good hotel.'" (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).

To the extent these allegations can be construed to assert a claim of deliberate indifference to the plaintiff's health or safety arising under the Eighth Amendment, the court concludes that this claim likewise entitles Barfield to no relief.  Barfield presents no evidence that the named defendant had knowledge of specific facts regarding the conditions at Easterling from which an inference could be drawn that a substantial risk of serious harm existed.  *Carter*, 352 F.3d at 1350 ("Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...").  Moreover, the record is devoid of any evidence showing that

defendant Hetzel drew the necessary inference and thereafter ignored the risk. Barfield has therefore failed to establish each of the requisite elements of deliberate indifference. Thus, summary judgment is due to be granted in favor of the defendant.

(iii)  <u>Totality of Conditions</u>.  The court has undertaken a thorough and exhaustive review of the claims presented by Barfield and the response to these claims by the defendant.  After such review, the court finds that the challenged conditions though uncomfortable, inconvenient, unpleasant and/or objectionable were not so extreme as to violate the Eighth Amendment. *Chandler v. Baird*, 926 F.2d at 1289 (11th Cir. 1991). Specifically, the totality of the claims before this court do not amount to conditions which fall below applicable constitutional standards as Barfield failed to demonstrate that the challenged conditions had "a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need...." *Wilson*, 501 U.S. at 304.  "To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes."  *Id*.  While the allegations made by Barfield are somewhat troubling, the evidence regarding the conditions at Easterling fails to identify with requisite specificity the precise nature of the conditions and their impact on Barfield's heath or safety.

Furthermore, even had Barfield demonstrated "an excessive risk to [his] health or safety," correctional officials cannot be held liable "solely because of the presence of

28

objectively inhumane prison conditions." *Farmer*, 511 U.S. at 838.  Barfield has presented

no specific facts nor produced any evidence indicating that the defendant subjectively knew

of a substantial risk of harm and disregarded this risk so as to establish a violation of the

Eighth Amendment.  *Id*.; *Carter*, 352 F.3d at 1349.  Consequently, summary judgment is

due to be granted in favor of the  defendant on these claims.  *See McElligott v. Foley*, 182

F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### G.  Medical Co-Payment

Barfield complains that his constitutional rights were violated by assessment of a

$3.00 co-payment for partial payment of costs attendant to his receipt of medical treatment.

 This action, standing alone, does not violate the Constitution.  The mere fact that Barfield

is charged a nominal fee or co-payment for medical treatment does not in any way deprive

him of a protected right, privilege or immunity.  *Shapley v. Nevada Board of State Prison

Commissioners*, 766 F.2d 404, 408 (9th Cir. 1985) (imposition of fee for medical treatment

provided to an inmate does not amount to a constitutional violation);  *Bester v. Wilson*,

2000 WL 1367984 at *8 (S.D. Ala. August 18, 2000) ("[T]he charging of a fee to prisoners

for medical treatment from their [available] funds has been held to be constitutional when

challenged on several due process and Eighth Amendment grounds.").  Barfield does not

allege nor is there any evidence indicating that he was denied medical treatment because

he was unable to pay the fee; instead, the evidentiary materials submitted by the defendant

establish that medical treatment is provided to inmates despite their inability to provide a co-payment.  Since Barfield has failed to allege a violation of his constitutional rights with respect to the assessment/collection of fees associated with medical treatment, the defendant is entitled to summary judgment on this claim.

### H.  Fees for Money Orders and Replacement Wristbands

Barfield challenges the Alabama Department of Corrections' imposition of a $1.00 processing fee for money orders sent to inmates through the mail and the $3.00 fee assessed when inmates lose, damage or destroy their wristbands.  He contends that imposition of these fees violates his constitutional rights.[4]  The policy applicable to the challenged processing fee became effective on September 1, 2010 and permitted the Alabama Department of Corrections to collect a $1.00 processing fee for each money order received through the mail that is processed by correctional officials and deposited into an inmate's account.  *King v. Boyd*, 2012 WL 6923804 at 9-10 (M.D. Ala. 2012); *Colin v. Boyd*, 2012 WL 2052680 at 7 (M.D. Ala. 2012).  The Alabama Department of Corrections also instituted a policy requiring that a $3.00 fee be assessed to replace wristbands purposely removed, damaged or destroyed by inmates as the wristbands assist in maintaining institutional security.  Assessment of the fee allows correctional officials to defray the costs of replacing wristbands lost or damaged by inmates.

---

[4]While Barfield challenges these fees as violative of his Eighth Amendment rights, it is clear that his claims are more appropriately analyzed under the Due Process Clause of the Fourteenth Amendment which provides that no state "shall deprive any person of life, liberty, or property without due process of law."

Although Barfield complains about being assessed a processing fee for money orders he receives and a replacement fee for any wristband he removes or damages, the court finds that the prison system has a reasonable interest in defraying the costs of incarceration for purely discretionary services and services incurred due to damage caused by inmates, the provision of which may include charging inmates costs associated with expenses incurred by correctional officials in allowing inmates to maintain funds in a prison account or replacing property damaged by inmates.[5]  Put another way, the plaintiff has no constitutionally protected right to avoid payment of the costs and/or fees associated with his desire to have access to various prison privileges including the availability of an inmate money account or the need to replace his wristband.  *See Wolff v. McDonnell,* 418 U.S. 539, 556 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); *Givens*, 381 F.3d at 1065 (concluding that Alabama has not created a property interest for inmates in the interest that accrues on their PMOD accounts and correctional officials may utilize interest earned on the inmate accounts to defray the considerable costs associated with maintaining the accounts); *Jensen v. Kleckler*, 648 F.2d 1179, 1183 (8th Cir. 1981) (holding that there was no basis for a due process claim where deduction from prisoner accounts for postage were

---

[5]Inmate PMOD accounts are maintained by the Alabama Department of Corrections as a convenience for inmates at a considerable cost to the Department.  *Givens v. Alabama Department of Corrections*, 381 F.3d 1064, 1065 (11th Cir. 2004).

"assessment[s] for value received" and plaintiffs did not contend that they did not receive the services for which they were charged); *Slade v. Hampton Road Regional Jail,* 407 F.3d 243, 251-53 (4th Cir. 2005) (holding that imposition of a $1.00 per day room and board charge does not amount to a "punishment or fine" nor does the automatic deduction of this fee from an inmate's trust fund account constitute an unconstitutional interference with a property interest). Accordingly, the court concludes that the assessment of nominal fees on money orders sent to inmates and for costs associated with replacing wristbands damaged by inmates for the purpose of defraying some of the costs associated with processing such transactions and replacing the wristbands, without more, fails to state a violation of an inmate's federally protected constitutional rights.[6] *See Sandin v. Connor*, 515 U.S. 472 (1995).

## I. Access to Court

Barfield asserts that the law library at Easterling is not sufficient to meet the needs of inmates. The court construes this allegation as one asserting a denial of access to the court.

The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the

---

[6]The court is unaware of any basis under which an inmate should be afforded greater protection by the Constitution from the assessment of fees and costs associated with the voluntary consumption and/or utilization of optional goods and services, those which are not associated with the provision of basic human needs, than is afforded an ordinary free-world citizen.

courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials.  *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"  *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State ... enable the prisoner to **discover grievances**, and to **litigate effectively** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires."  *Id*. at 354 (emphasis in original).

The Court similarly determined that the mere claim of a systemic defect, without a showing of actual injury, did not present a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's

capability to present claims.  518 U.S. at 356.  "*Bounds* ... **guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts**. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356 (emphasis added).  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement....  *[I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone*."  *Id*. at 356-357 (emphasis added).  "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance."  *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting

'[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.' [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

Barfield presents only a conclusory allegation of a constitutional violation and fails to allege any shortcomings with respect to the legal access provided to him during his confinement at Easterling which actually hindered his efforts to pursue claims before this or any other court.  Although Barfield alleges he had limited physical access to the law library and the research tools contained therein, it is undisputed that at all times correctional officials allowed Barfield to receive legal materials from the prison law library upon request and in no way inhibited his preparation of legal documents, filing of pleadings or processing of any cause of action.  Throughout the proceedings in this case, Barfield demonstrates he is both proficient and prolific at presenting and arguing the claims of his choice to the court of his choosing.  Nothing in the record indicates that the challenged lack of access to materials or assistance improperly impeded or adversely affected Barfield's efforts to pursue nonfrivolous legal claims.  Barfield has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of pursuing claims in this or any other court. Hence, Barfield does not establish he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and the defendant is therefore entitled to summary judgment on the legal access claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails

because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (An inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage.").

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Hetzel's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of defendant Hetzel.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 16, 2015 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 29th day of January, 2015.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE